1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW TASAKOS, on behalf of
himself, the general public, and those
similarly situated,

       Plaintiff,

           v.

AGA SERVICE COMPANY (d/b/a
ALLIANZ GLOBAL ASSISTANCE) and
JEFFERSON INSURANCE COMPANY,

       Defendants.

CASE NO.

**COMPLAINT—CLASS ACTION**

JURY TRIAL DEMANDED

CLASS ACTION COMPLAINT           1

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

**INTRODUCTION**

1.      Plaintiff Andrew Tasakos, by and through his counsel, brings this class action against Defendants AGA Service Co. d/b/a Allianz Global Assistance ("AGA" or "Allianz") and Jefferson Insurance Company ("Jefferson") (collectively, "Defendants") to seek redress for Defendants' unlawful, unfair, and deceptive practices relating to their online marketing and sale of insurance policies on the checkout pages of ticketing and travel websites.

2.      This is a case about Defendants' longstanding practice of charging consumers with unlawful, and hidden, add-on fees. On major event and travel websites, including ticketmaster.com and the websites of major airlines, Defendants purport to make a straightforward offer to consumers: insurance for the event tickets and travel arrangements consumers purchase on those websites. However, Defendants unfairly charge unsuspecting consumers additional fees, *on top of the calculated premium*, without disclosing that they are charging those fees. In places other than the checkout screens where the transactions occur, Defendants try to justify those fees by representing that the fees are for a supposed assistance service. That service purports to allow insureds to spend time on the telephone with AGA's customer service representatives to request information about various topics, such as directions, weather, restaurants, hotels, new travel arrangements, and possibly medical needs. But consumers are unaware of such service and they do not want to pay for it, and certainly not at the price Defendants charge for it.

3.      Under Washington law, Defendants must file their premium plans with the insurance commissioner and cannot charge any rates or fees above their approved filings. In addition, an insurance agent such as AGA is not permitted to collect a fee or compensation from consumers in connection with the insurance unless, prior to the sale: (a) it provides written disclosure of the compensation it receives from both the consumer and the insurer and (b) the consumer provides written consent to the fees and commissions at issue.

4.      Here, Defendants present an offer of insurance for a single price that, unbeknownst to consumers, consists of both an insurance premium and a required fee for add-on

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

services. The bundled fee for assistance services was not filed with or approved by the insurance commissioner. AGA does not provide written disclosure of its compensation to insureds and, of course, insureds do not sign any such disclosures.

5.      In sum, Defendants have devised a scheme to circumvent insurance laws, and the assistance service is just a pretext to collect illegal fees at the expense of millions of consumers.

6.      Plaintiff brings this action on behalf of himself, the general public, and similarly situated individuals, seeking a judgment against Defendants that would, among other things: (1) prohibit Defendants from charging mandatory and/or undisclosed fees (in addition to premiums) for AGA's role (whether purportedly for "assistance" services or otherwise) in connection with the insurance purchases; (2) require Defendants to plainly and truthfully disclose all premiums, fees, and charges to consumers prior to their online purchase of insurance and to give consumers the option to accept or decline particular add-on fees; and (3) require Defendants to pay damages to Plaintiff and class members.

## PARTIES

7.      Andrew Tasakos is, and at all times alleged herein was, an individual and a resident of Shoreline, Washington.

8.      Defendant AGA Services Co. d/b/a Allianz Global Assistance ("AGA") is a Virginia corporation headquartered in Richmond, Virginia. AGA maintains its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. AGA is an affiliate of Jefferson and AGA is Jefferson's appointed agent for insurance business transacted in or issued in Washington. AGA has substantial contacts with and receives substantial benefits and income from Washington and throughout the United States.

9.      Defendant Jefferson Insurance Company is a New York corporation headquartered in Richmond, Virginia. Jefferson maintains its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. Jefferson underwrites some of the insurance policies at issue in this lawsuit. Jefferson, directly and through its agents, has substantial contacts with and receives substantial benefits and income from Washington and throughout the United States.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

10.     AGA and Jefferson are referred to collectively herein as "Defendants."

11.     With respect to the allegations herein, AGA acted as the agent of Jefferson and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

12.     With respect to the allegations herein concerning policies underwritten by Jefferson: (a) the acts and omissions of each of AGA and Jefferson concurred and contributed to the various acts and omissions of each other in proximately causing the injuries and damages as herein alleged; (b) AGA and Jefferson each aided and abetted the acts and omissions of each other in proximately causing the damages, and other injuries, as herein alleged; (c) AGA and Jefferson each ratified each and every act or omission complained of herein; and (d) AGA and Jefferson were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

13.     Jefferson is jointly and/or vicariously liable for Allianz's wrongful conduct in connection with the marketing and sale of Jefferson policies.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

15.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

16.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of Washington. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from services provided to persons in the State of Washington. Defendants have engaged, and continue to engage, in

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    substantial and continuous business practices in the State of Washington. Defendants' wrongful
2    acts and omissions occurred in Washington.

3    17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a
4    substantial part of the events or omissions giving rise to the claims occurred in the State of
5    Washington, including within this District.

6    18.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

7                        **DETAILED SUBSTANTIVE ALLEGATIONS**

8    19.    For the protection of consumers, insurance is a highly regulated service in every
9    state, including Washington. Washington requires insurers and their agents to obtain approval for
10   insurance rates prior to offering those policies and rates to consumers, and to clearly identify the
11   approved insurance premium (inclusive of all fees and charges required for the procurement of
12   the insurance) to consumers. *See* RCW 48.19.040, 48.18.180.

13   20.    There are also strict requirements if an insurance producer wishes to charge a fee
14   for its services. An insurance agent (or producer) such as AGA is not permitted to collect a fee or
15   compensation from consumers unless (a) it provides written disclosure of the compensation it
16   receives from both the consumer and the insurer and (b) the consumer provides written consent
17   to the fees and commissions at issue. *See* RCW 48.17.270. Insurance producers cannot charge
18   fees in connection with the procurement of insurance, above what they earn in regular
19   commissions, without having advised the prospective insured, in writing, the amount they will be
20   charged. *See* WAC 284-30-750. Accordingly, producers must identify any fees they charge
21   separately from the premium and in sufficient detail for consumers to understand the fees and for
22   there to be a determination that the fees are in compliance with the insurance laws and
23   regulations.

24   21.    The Washington legislature has declared that it is unfair and against the public
25   interest to violate Washington insurance laws and regulations, and provided that such violations
26   are actionable under Washington's Consumer Protection Act. *See* RCW 19.86.170, 48.01.030,
27   48.30.010; WAC 284-30-750.

CLASS ACTION COMPLAINT                    5                    **Gutride Safier LLP**
                                                              113 Cherry Street, #55150
                                                              Seattle, WA 98140
                                                              (415) 639-9090 x109

22.     Reasonable consumers expect that insurers and their agents comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any separate, additional, producer, or non-insurance service or fee will also be clearly identified prior to any agreement to pay for such fee. Reasonable consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and not a vehicle for hidden fees added to the insurance premium. In any event, Washington law prohibits Defendants from imposing hidden and/or mandatory add-on fees in their insurance offers to consumers.

23.     AGA markets and sells the trip insurance policies and event ticket insurance policies at issue. AGA is responsible for obtaining approval of the Jefferson policies and rates at issue. AGA is responsible for charging and collecting the premiums and fees at issue. AGA purports to provide a supposed "assistance service" for which it deceptively, unfairly, and unlawfully charges consumers, and has been unjustly enriched by those unlawful, unfair, and undisclosed fees.

## I.   Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance Assistance Services" in Conjunction with Trip Insurance

24.     When purchasing airfare and similar travel fares or accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants are the largest providers of trip/travel insurance in Washington and the United States.

25.     When Defendants present an insurance offer, it is the only available option. Recent examples of offers made by Defendants on the websites of Alaska Airlines and American Airlines are below:

CLASS ACTION COMPLAINT                6

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

**Add travel insurance (highly recommended)**

Protect your **$437.21** trip to Portland.

Highly Recommended

YES  **Add protection** for **$27.33** total.

- **Compensation**
  Up to 100% reimbursement for covered trip cancellation and interruption

- **Peace of mind**
  Insurance for covered travel delay expenses and lost, stolen or damaged baggage

- **Help when you need it**
  24/7 assistance in the event of a travel or medical emergency

- **COVID-19**
  Provides reimbursement for certain expenses if you or a travel companion gets sick with COVID-19 (see links below)

NO  No, thank you. I understand my **$437.21** trip will not be protected.

Read what another Alaska guest had to say about travel insurance:

"With the uncertainty of COVID-19, I think flight insurance is wise." — *Olivia M., Rosalia, WA. Sept 2021*

39,112 guests protected their trip in the last 7 days

COVID: More about coverage, limitations, & exclusions

Recommended/offered/sold by Allianz Global Assistance. Underwriter: Jefferson Insurance Company or BCS Insurance Company. Plan incl. insurance & assistance services. Terms & exclusions (incl. for pre-existing conditions) apply. Plan & Pricing details, disclosures

Trip Insurance

32,950 American Airlines customers protected their trip in the last 7 days    **Allianz**

( • Required)

**Add Trip Insurance?** •

○ **Yes**, protect my trip for a total of **$22.75** ✓ **Recommended**
Provides up to 100% reimbursement for covered trip cancellation. Also includes benefits for trip interruption, travel delay, baggage protection, and 24/7 assistance.

○ **No**, I choose not to protect my **$143.10** purchase. I understand by declining coverage I may be responsible for cancellation fees and expenses.

Review Period: If you're not completely satisfied, you have 10 days (or more, depending on your state of residence) to request a refund, provided you haven't started your trip or initiated a claim. Plans are non-refundable after this period.

⚠ IMPORTANT COVERAGE LIMITATIONS: COVID-19

Recommended, offered and sold by a third party, Allianz Global Assistance, not American Airlines. Underwritten by Jefferson Insurance Company or BCS Insurance Company. Terms and exclusions (incl. for pre-existing conditions) apply. Plan details and disclosures

26.    As indicated above, a single total price is identified for the "insurance" or "protection" prior to purchase. The consumer may "add Trip Insurance" or "protect" the trip for that specific price.

CLASS ACTION COMPLAINT             7              **Gutride Safier LLP**
                                                        113 Cherry Street, #55150
                                                        Seattle, WA 98140
                                                        (415) 639-9090 x109

27.      Defendants do not always include a reference to any assistance service or benefits, but when they do include a reference, it is briefly mentioned as one of the benefits of the "insurance" and is typically characterized as related to a "travel or medical emergency." Within these point-of-sale offers, Defendants do not identify assistance benefits as separate, non-insurance services and Defendants do not indicate that the assistance services come with an additional charge, separate from the premium.

28.      The hyperlink within the offer to "plan details and disclosures" does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the calculated premium for the insurance product. First, there is no statement within the offer that the price includes a fee for non-insurance services. Second, the hyperlink is in fine print and follows the sentence "Terms and exclusions (incl. for pre-existing conditions) apply." That suggests that the plan details accessible by hyperlink concern the insurance terms, not that there is a separate fee for a supposed non-insurance service. Third, even if a consumer follows the hyperlink, the landing page has a table at the top of the page, which includes a prominent list of benefits (such as "Trip Cancellation Coverage," "Trip Interruption Coverage," "Travel Delay Coverage," and "Baggage Loss Coverage"), and the benefit entitled "24 Hour Assistance" is identified as "Included," without any indication that there is a separate charge for that benefit. This table provides no notice to a reasonable consumer that he or she will be charged both an insurance premium *and a mandatory additional fee*, supposedly for assistance services

29.      After purchasing the trip insurance, the customer is sent a confirmation email that contains the policy number and the total cost of the insurance. The email confirmation includes a hyperlink to the "policy documents." The vast majority of insureds never follow the link to the policy documents. The policy documents also include a cover letter, which, for the first time, identifies a separate charge for "assistance." Summaries of the types of information insureds may request through Defendants' assistance service appear in the policy documents under the headings "Travel Services During Your Trip" and "Concierge Services," the vast majority of which are inapplicable to or not valued by purchasers of the policies. These services entitle

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1   insureds to call a toll-free number to speak with customer service representatives to obtain

2   various types of information, including where to refill prescriptions, where to find child care

3   equipment, referrals to pet care services, destination information (including information

4   concerning nearby restaurants, hotels, events, and activities), information regarding business

5   services, information regarding gift deliveries, information related to replacing passports,

6   information regarding doctors and medical facilities, legal referrals, and finding translation

7   services. To access such informational assistance services, insureds must supply their policy

8   number and other information.

9          30.     There is no significant demand in the market for the assistance benefits

10  purportedly offered by AGA, in the form in which they are offered and separate from actual

11  claim events. This is especially true of domestic travel. Reasonable consumers who purchase

12  domestic travel tickets or reservations online are not interested in paying AGA so that they have

13  the option to call AGA for information encompassed within AGA's travel assistance services.

14  Consumers who purchase airfare online and through mobile applications can readily find the

15  information encompassed within AGA's assistance services for *free*, and on demand, using the

16  internet and widely available applications (such as from Google, Apple, Yelp, and many other

17  service providers), or from more local or personalized sources than AGA can offer. Reasonable

18  consumers are not interested in paying money to have the option to call AGA's toll-free hotline,

19  after first searching for their insurance policy number and other information regarding their

20  event, then spending several (and likely many) minutes on hold and/or speaking to multiple

21  service representatives, having customer service agents note their inquiries, conduct searches

22  related to those inquiries, and then eventually (hours or days later) email or call the insureds back

23  with some of the requested information. That is an inefficient, slow, and belabored process for

24  obtaining information, especially as compared to the widely available means of obtaining such

25  information promptly and for free. Given that reality, and given that Defendants make no

26  mention of any separate charges for such services at the time they present their insurance offers

27  to consumers, consumers have no reason to suspect they are being charged for AGA's non-

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1   insurance assistance service at the time they insure their travel purchases. Consumers would not

2   pay for such a service if given the choice whether to do so.

3        31.     In any event, the vast majority of insureds are not aware of the availability of

4   those services or that they have been charged for them.

5        32.     Neither the insurance offer nor any other portion of the checkout pages where

6   online travel purchases are completed disclose: (a) a specific breakdown of the components of

7   the price for the insurance; (b) the existence and amount of the fee for supposed non-insurance

8   assistance benefits; (c) any material facts about the nature of such "assistance" services or why

9   the assistance fee was included; (d) how much compensation AGA would receive from Jefferson

10  for the transaction and how much compensation it would receive for the mandatory assistance

11  fee it bundled into the transaction; or (e) that the price included an unlawful agent's fee and/or

12  unlawful amount of premium. Defendants never seek or obtain a consumer's informed consent to

13  the specific assistance fee charged, and consumers have no ability to obtain the travel insurance

14  while declining the embedded assistance fee.

15       33.     AGA does post (on its website) pricings sheets for its supposed non-insurance

16  assistance service, but (a) those pricing sheets are difficult to find (requiring access through

17  multiple hyperlinks), (b) reasonable consumers do not actually find and visit those webpages

18  prior to purchasing the insurance on other websites, and (c) the pricing factors set forth in those

19  documents belie AGA's characterization of the fees as merely for non-insurance assistance

20  services. Defendants AGA and Jefferson represent on pricing sheets that fees for assistance

21  services for travel depend on the cost of the trip and the age of the insured. But those factors are

22  also used to calculate premiums, and those factors bear no reasonable relation to the cost of the

23  supposed assistance services, which should not vary dramatically in price depending on the trip

24  cost and the age of the insured.

25       34.     If AGA were genuinely attempting to market an informational assistance service,

26  it would likely offer it for free (using advertisements to cover costs) or it would charge a flat,

27  attractive fee and highlight some competitive edge over the alternative sources of information

CLASS ACTION COMPLAINT                         10                    **Gutride Safier LLP**
                                                                    113 Cherry Street, #55150
                                                                    Seattle, WA 98140
                                                                    (415) 639-9090 x109

available to consumers. Instead, AGA *hides* its agency fee and the assistance service from consumers at the point of purchase, uses a formula that *increases* the fee according the purchase and risk at issue, and does not actually invest in providing a convenient informational assistance service. To minimize attention to the additional fees it charges, AGA sends contradictory messages to two different audiences: (a) suggesting to consumers (during the solicitation) that there is just a single insurance premium (to keep them ignorant of the additional charge), while (b) suggesting to regulators that the fee for assistance services is distinct from the insurance premium (to present a lower premium figure and to try to avoid further scrutiny of the "non-insurance" fee).

35.     Regardless of how Defendants' "assistance" fees are ultimately characterized—whether as an artifice to collect an unlawful agent's fee or as genuinely for non-insurance services (that hardly anyone would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the Washington insurance commissioner to charge these mandatory, hidden fees on top of the premium. If Defendants followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

36.     In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with trip insurance is deceptive, unfair, and unlawful.

## II.     Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance Assistance Services" in Conjunction with Event Ticket Insurance

37.     When purchasing tickets to events from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants are the dominant providers of event ticket insurance in Washington and the United States, and the main (if not only) provider of such insurance on the Ticketmaster.com website.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    38.    As shown in the example below, when consumers purchase event tickets on

2  Ticketmaster.com and similar websites, Defendants present consumers with an offer of insurance

3  during the checkout process. When such an offer is presented to a consumer, Defendants' offer is

4  the only available option for protecting the event ticket purchases.



18    39.    The offer is plainly described as "Ticket Insurance" and "Event Ticket Insurance

19  for an additional $[amount] per ticket." Accordingly, reasonable consumers understand the

20  insurance premium to equal the quoted price (here, $9). Unbeknownst to the consumer, the $9

21  price quoted above consists of "$7.53 for insurance and $1.47 for assistance." The "assistance"

22  service is essentially a toll-free line to customer service representatives. The "Ticket Insurance"

23  offer never mentions any agent's fee or any charge (in addition to any calculated insurance

24  premium) for a supposed non-insurance assistance service. Typically, a consumer will purchase

25  the insurance without ever realizing that he or she paid AGA for access to a toll-free customer

26  service line.

27

CLASS ACTION COMPLAINT                    12                    **Gutride Safier LLP**
                                                                113 Cherry Street, #55150
                                                                Seattle, WA 98140
                                                                (415) 639-9090 x109

40.     The "Ticket Insurance" offer includes a hyperlink for "Plan details and disclosures," but it does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the premium for the insurance product. First, there is no statement within the offer that the price includes a fee for non-insurance services. Second, the hyperlink is in fine print and follows the sentence "Terms and exclusions (incl. for pre-existing conditions) apply." That suggests that the plan details accessible by hyperlink concern the insurance terms, not that there is a separate fee for a supposed non-insurance service. Third, even if a consumer follows the hyperlink, the landing page includes a prominent list of three benefits in a table at the top of the page: (1) "Ticket Cancellation Coverage," for "Up to event ticket cost" (subject to a maximum); (2) "Viewer Advantage," characterized as "Included;" and (3) "Pre-existing Medical Condition Exclusion Waiver," described as "Available." This table again provides no notice to a reasonable consumer that he or she will be charged both an insurance premium *and a mandatory additional fee*, supposedly for assistance services.

41.     After purchasing the event ticket insurance, the customer is sent a confirmation email containing the policy number and total cost of the insurance. The email confirmation includes a hyperlink to the "policy documents." The vast majority of insureds never follow the link to the policy documents. The policy documents also include a cover letter, which, for the first time, identifies a separate charge for "assistance" services, which AGA and Jefferson call "Viewer Advantage Services" in their event ticket insurance policy documents. These "assistance" or "Viewer Advantage Services" entitle insureds to call a toll-free number to speak with customer service representatives to obtain various types of information, including directions, information concerning nearby restaurants, hotels, and parking garages, weather forecasts, destination information, information related to replacing passports, and information regarding doctors and medical facilities. To access such informational assistance services, insureds must supply their policy number and other information about the insured event (such as the venue and date).

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

42.     There is no significant demand in the market for the assistance benefits purportedly offered by AGA, in the form in which they are offered. Reasonable consumers who insure their event ticket purchases are not interested in paying AGA so that they have the option to call AGA for information encompassed within AGA's "Viewer Advantage Services." Consumers who purchase event tickets online and through mobile applications can readily and promptly find the information encompassed within AGA's "Viewer Advantage Services" for *free*, and on demand, using the internet and widely available applications (such as from Google, Apple, Yelp, and many other service providers). Reasonable consumers are not interested in paying money to have the option to call AGA's toll-free hotline, after first searching for their insurance policy number and other information regarding their event, then spending several (and likely many) minutes on hold and/or speaking to multiple service representatives, having customer service agents note their inquiries, conduct searches related to those inquiries, and then eventually (hours or days later) email or call the insureds back with some of the requested information. That is an inefficient, slow, and belabored process for obtaining information, especially as compared to the widely available means of obtaining such information promptly and for free. Given that reality, and given that Defendants make no mention of any separate charges for such services at the time they present their insurance offers to consumers, consumers have no reason to suspect they are being charged for AGA's non-insurance assistance service at the time they insure their event ticket purchases. Consumers would not pay for such a service if given the choice whether to do so.

43.     Neither the insurance offer nor any other portion of the checkout pages where event ticket purchases are completed disclose: (a) a specific breakdown of the components of the price for the insurance; (b) the existence and amount of the fee for supposed non-insurance assistance benefits; (c) any material facts about the nature of such "assistance" services or why the assistance fee was included; (d) how much compensation AGA would receive from Jefferson for the transaction and how much compensation it would receive for the mandatory assistance fee it bundled into the transaction; or (e) that the price included an unlawful agent's fee and/or

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1   unlawful amount of premium. Defendants never seek or obtain a consumer's informed consent to

2   the specific assistance fee charged, and consumers have no ability to obtain the event ticket

3   insurance while declining the embedded assistance fee.

4       44.    AGA does post (on its website) pricings sheets for its supposed non-insurance

5   assistance service, but (a) those pricing sheets are difficult to find (requiring access through

6   multiple hyperlinks), (b) reasonable consumers do not actually find and visit those webpages

7   prior to purchasing the insurance on other websites, and (c) the pricing factors set forth in those

8   documents undermine AGA's characterization of the fees as merely for non-insurance assistance

9   services. Defendants represent on the pricing sheets that fees for assistance services in

10  connection with events depend on the cost of the event tickets and the booking window (the time

11  between the purchase and the event date). But those factors are also used to calculate premiums,

12  and those factors bear no reasonable relation to the cost of the information service, which should

13  not vary in price depending on the cost of the event or on the consumer's booking window.

14      45.    If AGA were genuinely attempting to market an informational assistance service,

15  it would likely offer it for free (using advertisements to cover costs) or it would charge a flat, low

16  fee and highlight some competitive edge over the alternative free sources of information

17  available to consumers. Instead, AGA *hides* its agency fee and the assistance service from

18  consumers at the point of purchase, uses a formula that *increases* the fee according to the

19  purchase and risk at issue, and does not actually invest in providing a convenient informational

20  assistance service. To minimize attention to the additional fees it charges, AGA sends

21  contradictory messages to two different audiences: (a) suggesting to consumers (during the

22  solicitation) that there is just a single insurance premium (to keep them ignorant of the additional

23  charge), while (b) suggesting to regulators that the fee for assistance services is distinct from the

24  insurance premium (to present a lower premium figure and to try to avoid further scrutiny of the

25  "non-insurance" fee).

26      46.    Regardless of how Defendants' "assistance" fees are ultimately characterized—

27  whether as an artifice to collect an unlawful agent's fee or as genuinely for non-insurance

CLASS ACTION COMPLAINT         15

services (that hardly anyone would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they should. Defendants did not receive approval from the Washington insurance commissioner to charge these mandatory, hidden fees on top of the premium. If Defendants followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

47.     In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with event ticket insurance is deceptive, unfair, and unlawful.

**III.    Plaintiff's Experience**

48.     On or about April 4, 2019, Plaintiff visited the website of Alaska Airlines (www.alaskaair.com) to purchase roundtrip flight tickets. The cost of that fare was $114.50.

49.     After selecting his flight, he reached a checkout screen where he was presented with an offer to purchase insurance for the trip. In particular, AGA "recommended" that Plaintiff purchase "protection" for his trip for a single price of $21.00. Plaintiff was required to either accept or decline the insurance offer in order to proceed with his purchase of flight tickets. The offer was presented in a manner similar to the example set forth in paragraph 25 herein, although there were no references to COVID-19 at the time of his purchase and, on information and belief, the fine print hyperlink did not include the word "pricing." AGA designed, controlled, and possesses the exact offer text presented to Plaintiff.

50.     AGA and Jefferson's offer was the only insurance option presented to Plaintiff. There was no choice of plans or insurers during the checkout process. A single price of $21 was stated as the price of the insurance. There was no indication that any other fee other than an insurance premium was included in that price. In particular, the insurance offer did not indicate that Plaintiff would automatically be charged a separate fee for "assistance services" on top of the regulated insurance premium, and there was no indication that any emergency assistance that

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

may have been included with the insurance benefits was an add-on service subject to a separate charge. In any event, there was no option to purchase the trip insurance without paying the additional assistance fee.

51. At the time he accepted the offer of insurance, Plaintiff did not know that the total amount he was charged for the insurance included both an insurance premium and a mandatory fee that Defendants contend was for assistance services but that was, in effect, an unlawful agent's fee or unauthorized premium. At a minimum, it was an unfair charge and Defendants have no justification for bundling it with the premiums in the way they did.

52. On or about April 4, 2019, AGA sent Plaintiff a confirmation email regarding his purchase of trip insurance. The email receipt identified the amount paid for his "Trip Protector" policy as $21.00. It did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The email confirmation included a hyperlink to his "policy document."

53. The policy documents reached by way of that link include a cover letter (thanking Plaintiff for his purchase of "Allianz Travel Insurance"), a "Letter of Confirmation," an "Individual Travel Insurance Policy" underwritten by Jefferson, and the privacy policy of AGA and Jefferson. These documents identify certain assistance benefits as included with Plaintiff's purchase but do not disclose that Defendants charged Plaintiff a separate fee for those assistance services, on top of the insurance premium. The policy documents identified the total cost of the insurance plan as $21.00, without indicating that the total cost had two distinct components: an insurance premium and an extra fee for assistance services. The documents do not disclose that the insurance premium Defendants were authorized to charge for the insurance was <u>less than</u> $21.00 and thus that they were not legally allowed to charge $21.00 for the travel insurance they sold to Plaintiff. Plaintiff had no reason to believe that the $21 he paid included a hidden charge for "assistance" services, on top of what Defendants were legally allowed to charge for their insurance.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

54.     Defendants charged Plaintiff an unauthorized, unlawful, unfair, and undisclosed amount for assistance services that can be determined through discovery, and that he would have declined to pay for if given the choice.

55.     Neither the insurance offer nor any other portion of the Alaska Airlines checkout pages where the transaction was completed disclosed: (a) a specific breakdown of the components of the price for the insurance; (b) the existence and amount of the fee for supposed non-insurance assistance benefits; (c) any material facts about the nature of such "assistance" services or why the assistance fee was included; (d) how much compensation AGA would receive from Jefferson for the transaction and how much compensation it would receive for the mandatory assistance fee it bundled into the transaction; or (e) that the price included an unlawful agent's fee and/or unlawful amount of premium. Defendants never sought or obtained Plaintiff's consent to the specific assistance fee charged, and Plaintiff had no ability to obtain the travel insurance while declining the embedded assistance fee.

56.     When accepting Defendants' insurance offer, Plaintiff was not aware of the existence of any assistance fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time he purchased the insurance. As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff agreed to pay Defendants to insure his airfare purchase and believed that the amount he paid AGA and Jefferson was for the travel insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff was seeking only lawful and proper insurance; he was not seeking "non-insurance" informational "assistance" services and would not have paid the price charged for such services by Defendants if given the choice. He was not aware of and did not agree to pay for any additional or unlawful agent's fee or any additional "assistance" service that Defendants purport to offer to their insureds.

57.     Plaintiff would have paid less than he did if Defendants had complied with Washington law and charged him only an approved premium, rather than unfairly, unlawfully,

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

and deceptively including an undisclosed, additional fee in the cost of the insurance. Plaintiff would have declined the fee for Defendants' supposed "assistance" service if given the choice.

**IV.    Because Defendants Intend to Continue Their Unfair Conduct, <u>an Injunction Is Needed to Protect the Public from Future Harm.</u>**

58.    An injunction is necessary to stop Defendants from violating Washington law and from continuing their unfair and unlawful conduct in charging add-on fees for travel insurance and event ticket insurance. Defendants should be prohibited from charging supposedly separate fees for "assistance" services as a mandatory fee in connection with the sale of insurance policies and from charging fees and/or premiums that have not been approved in Washington. Among other things, Defendants should be required to plainly and truthfully disclose, within their offers of travel insurance and event ticket insurance: (a) the specific, authorized premiums and all distinct fees and charges to consumers, including the existence and amount of the fee for supposed non-insurance assistance benefits; (b) material facts about the nature of such "assistance" services; and (c) how much compensation AGA would receive from Jefferson for the transaction and how much compensation it would receive for the mandatory assistance fee. Consumers must be given the option to accept or decline the assistance fee or any other add-on fee, and must give informed consent to any such fee before they are charged.

59.    Plaintiff will make online travel purchases (including airfare) and event ticket purchases in the future and will be presented with the option to insure those purchases through Defendants. Plaintiff generally desires to insure such purchases but, absent the injunctive relief sought, he will be forced either to pay an unlawful/unfair fee or to forgo the insurance he desires. Moreover, Plaintiff will not be able to determine whether he will be charged a hidden fee or an unlawful mandatory agent's fee, or in what amount. Plaintiff is unable, and will continue to be unable, to rely on Defendants' representations regarding the price of their insurance products, unless the injunctive relief requested in this Complaint is awarded. That present and continuing uncertainty is an ongoing harm to him as a consumer.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1    60.    Absent an injunction, Plaintiff and those similarly situated will be harmed again

2    in the same manner, or be deprived of the opportunity to purchase lawfully and fairly priced

3    insurance, which would be available on ticketing sites but for Defendants' unlawful, deceptive,

4    and unfair practices.

5                                    **CLASS ALLEGATIONS**

6    61.    Plaintiff brings this class action lawsuit on behalf of the following proposed class

7    ("Class") of similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil

8    Procedure, defined as follows:

> All natural persons who, while residing in Washington, purchased travel insurance
> policies or event ticket insurance policies from Defendants at any point from April 2,
> 2018, until the present, but excluding those persons who used AGA's assistance services.

12    62.    The following persons and entities are excluded from the Class: Defendants and

13    their officers, directors, employees, subsidiaries, and affiliates; and all judges assigned to this

14    case and any members of their immediate families.

15    63.    Plaintiff reserves the right to propose additional or alternative classes or

16    subclasses, or to narrow the above class definition. This reservation includes but is not limited to

17    classes or subclasses involving consumers in multiple states or involving particular issues.

18    64.    This action has been brought and may properly be maintained as a class action

19    against Defendants because there is a well-defined community of interest in the litigation and the

20    proposed class is easily ascertainable.

21    65.    Numerosity:  Plaintiff does not know the exact size of the Class, but he estimates

22    it is composed of more than 500 persons. The persons in the Class are so numerous that the

23    joinder of all such persons is impracticable and the disposition of their claims in a class action

24    rather than in individual actions will benefit the parties and the courts.

25    66.    Common Questions Predominate:  This action involves common questions of law

26    and fact to the potential Class because each class member's claim derives from the same

27    deceptive, unlawful and/or unfair statements, omissions, and practices. The common questions of

CLASS ACTION COMPLAINT                        20                        **Gutride Safier LLP**
                                                                       113 Cherry Street, #55150
                                                                       Seattle, WA 98140
                                                                       (415) 639-9090 x109

law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

    a. whether Defendants had a common, automated practice of charging consumers mandatory assistance fees on top of insurance premiums for travel insurance and event ticket insurance, without an option to decline or avoid those fees;

    b. whether Defendants had a common, automated practice of charging consumers mandatory assistance fees on top of insurance premiums for travel insurance and event ticket insurance, without disclosing the amount, nature, and bases of those fees;

    c. whether Defendants' conduct is *per se* unlawful, unfair, or deceptive in violation of the Washington Consumer Protection Act;

    d. whether Defendants' conduct is otherwise unlawful, unfair, or deceptive in violation of the Washington Consumer Protection Act;

    e. whether Defendants' conduct violates their duty of good faith and fair dealing;

    f. whether the fees Defendants' charged for their supposed assistance services constitute unlawful agent's fees in violation of RCW 48.17.270 and/or WAC 284-30-750;

    g. whether the fees Defendants' charged for their supposed assistance services constitute unlawful premium in violation of RCW 48.19.040 and/or 48.18.180;

    h. whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny and charging unlawful and excessive agent fees and/or premium charges, and thus charging consumers more than they are legally allowed to charge;

    i. whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by failing to disclose that the amounts charged to Plaintiff and class

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

members included mandatory assistance fees and by misrepresenting in insurance offers that the prices charged were solely for the insurance premium;

j. whether Defendants knew or should have known that reasonable consumers did not value the assistance services offered by AGA;

k. whether Defendants knew or should have known that reasonable consumers interpreted Defendants' insurance offers as a single premium and were unaware of any additional fee for AGA;

l. whether Defendants knowingly engaged in the alleged conduct;

m. the total amount of profits and revenues earned by Defendants and/or the total amount of monies or other obligations lost by class members as a result of the misconduct;

n. whether class members are entitled to payment of damages, plus interest thereon;

o. whether class members are entitled to payment of treble, exemplary and/or statutory damages plus interest thereon; and

p. whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief.

67. Typicality:  Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Further, the damages of each member of the Class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein. Plaintiff and members of the Class have suffered injury in fact as a result of Defendants' misleading, deceptive, unfair, and unlawful conduct. Plaintiff and members of the Class would not have paid the assistance fees but for Defendants' misconduct.

68. Adequacy of Representation:  Plaintiff will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on his own claims, Plaintiff will establish Defendants' liability to all class members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

69.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

70.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## PLAINTIFF'S FIRST CAUSE OF ACTION

### (Violations of Washington's Consumer Protection Act ("CPA") (RCW 19.86.010 et seq.))

71.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

CLASS ACTION COMPLAINT                    23

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

72.     For more than four years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and deceptive trade practices in Washington as outlined in this Complaint.

73.     Among other things, Defendants: (a) do not clearly distinguish assistance fees from the insurance premiums in their insurance offers; (b) do not identify, within their offers, the amount of the assistance fee and the nature of the assistance services offered; (c) do not provide consumers the option to accept or decline the assistance fee; (d) do not provide consumers with full disclosure of AGA's compensation arrangements for the insurance transaction; (e) do not obtain written consent from insureds, after full disclosure of all relevant facts, to charge fees in excess of the premium and beyond what AGA is paid in regular commission from the sale of the insurance; (f) charge consumers total amounts for Defendants' insurance plans above what Defendants are legally entitled to charge (as Defendants did not get approval to sell insurance for the total prices they charge consumers); and (g) mislead consumers to believe that they are paying only a lawful insurance premium that has not been increased (at Defendants' discretion) with hidden add-on fees.

74.     The misconduct alleged herein has been declared a per se unfair practice by Washington statutes and regulations.

75.     The misconduct alleged herein is unfair because it is contrary to the public interest in reasonable, regulator-approved, transparent, affordable, and non-discriminatory insurance rates, free from hidden, excessive, or otherwise unfair charges or fees.

76.     Moreover, the misconduct alleged herein causes substantial injury to consumers (requiring the payment of millions of dollars in fees, each year, that consumers would refuse to pay if given the choice) that consumers cannot reasonably avoid, as they cannot decline the assistance fees Defendants charge and are generally unaware of the fees. This substantial cumulative harm to consumers is not outweighed by any countervailing benefits. There is no benefit in forcing consumers to pay fees that they do not want to pay. If Defendants' assistance service has any value and if there is any demand for it in the market, Defendants could easily

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

provide consumers the option to accept or decline the assistance fee in the same manner (with a simple click) and the same location (the offer box presented on checkout screens) Defendants use for their insurance offers. Defendants already have automated processes to immediately calculate an insurance premium and assistance fee in connection with each offer and sale; there is no utility in Defendants' refusal to simply state those prices separately and to provide consumers the option to decline the assistance fee.

77.     Defendants' acts and omissions have the capacity to and are likely to deceive a substantial portion of the general public.

78.     The misconduct alleged herein occurred, and continues to occur, in trade or commerce, as it concerns the sale of insurance and the imposition of fees in consumer transactions.

79.     The misconduct alleged herein affects the public interest because the vast majority of consumers who make travel purchases online are presented with Defendants offers during the checkout process. Moreover, the Washington legislature has declared that the business of insurance affects the public interest. See RCW 48.01.030.

80.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such unfair conduct in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Defendants' unfair conduct caused Plaintiff and those similarly situated to pay money that they otherwise would not have paid. Had Defendants dealt fairly and honestly with their insureds, including by clearly distinguishing the assistance fee from the premium in the insurance offer, identifying the amount of the assistance fee and the nature of the services, and providing consumers the option to accept or decline the assistance fee, Plaintiff and those similarly situated would have declined and/or avoided the fee for assistance services.

81.     Plaintiff and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated

1  been adequately informed and not deceived by Defendants, they would not have paid the

2  assistance or agent fees charged by Defendants.

3       82.    Defendants engaged in these unfair, deceptive, and unlawful practices to increase

4  their own profits at the expense of their insureds.

5       83.    As a direct and proximate result of such actions, Plaintiff and the other class

6  members, have suffered and continue to suffer injury in fact and have lost money and/or property

7  as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount

8  which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

9  Among other things, Plaintiff and the class members lost the amounts they paid for the supposed

10  assistance services.

11       84.    As a direct and proximate result of such actions, Defendants have enjoyed, and

12  continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

13  is in excess of the jurisdictional minimum of this Court.

14       85.    Plaintiff seeks, on behalf of himself and those similarly situated, a declaration that

15  the above-described trade practices are fraudulent, unfair, and/or unlawful; an award of damages;

16  an award of enhanced or treble damages; and the reasonable fees and costs incurred in

17  connection with these claims.

18       86.    Plaintiff seeks, on behalf of himself and those similarly situated, an injunction to

19  prohibit Defendants from continuing to engage in the deceptive, unfair, and/or unlawful trade

20  practices complained of herein. Such misconduct by Defendants, unless and until enjoined and

21  restrained by order of this Court, will continue to cause injury in fact to the general public and

22  the loss of money and property in that Defendants will continue to violate the laws of

23  Washington, unless specifically ordered to comply with the same. This expectation of future

24  violations will require current and future consumers to repeatedly and continuously seek legal

25  redress in order to recover monies paid to Defendants to which they were not entitled.  Plaintiff,

26  those similarly situated, and the general public, have no other adequate remedy at law to ensure

27  future compliance with the laws alleged to have been violated herein.

**Gutride Safier LLP**
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (Breach of the Duty of Good Faith)

87.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

88.     The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Accordingly, Defendants had a broad duty to deal fairly and in good faith with their insureds, including Plaintiff.

89.     Defendants breached their duty to act fairly and in good faith by imposing fees on Plaintiff above what Defendants were legally authorized to charge in premium, without giving Plaintiff the option to decline the add-on fees and without giving Plaintiff sufficient information about the amount of the assistance fee and the nature of the services at issue.

90.     Instead, Defendants offered insurance for a single price and made misleading representations and omissions in their offer that led Plaintiff to believe that he was being charged a simple, lawful insurance premium, without hidden, unapproved fees being included.

91.     Defendants knew or should have known that consumers, including Plaintiff, would not pay Defendants' assistance fees if given the choice, and that consumers did not know Defendants were charging those assistance fees.

92.     Defendants deliberate refusal to identify the charge for their assistance service also made it less likely that insureds would use the service for which they had been charged.

93.     In doing the things alleged above, Defendants considered only their own interests and profits, and they disregarded the interests of Plaintiff and their other insureds. Defendants' conduct was unreasonable, frivolous, and/or unfounded.

94.     As a direct and proximate result of such actions, Plaintiff and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such unfair conduct in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Defendants' bad faith conduct caused Plaintiff and

Gutride Safier LLP
113 Cherry Street, #55150
Seattle, WA 98140
(415) 639-9090 x109

those similarly situated to pay money that they otherwise would not have paid. Had Defendants dealt fairly and honestly with their insureds, including by clearly distinguishing the assistance fee from the premium in the insurance offer, identifying the amount of the assistance fee and the nature of the services, and providing consumers the option to accept or decline the assistance fee, Plaintiff and those similarly situated would have declined and/or avoided the fee for assistance services.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, those similarly situated, and the general public, respectfully requests that the Court enter judgment against Defendants as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of damages in favor of Plaintiff and class members, in an amount to be determined at trial;

D. An award of enhanced or treble damages, also in an amount to be determined at trial;

E. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

F. For reasonable attorney's fees and the costs of suit incurred; and

G. For such further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

28

1

## **<u>JURY TRIAL DEMANDED</u>**

2
    Plaintiff hereby demands a trial by jury.

3

4
Dated: April 4, 2022                 Respectfully submitted,

5
                                 **GUTRIDE SAFIER LLP**

6
                                 By: *<u>/s/Stephen M. Raab/</u>*

7
                               Stephen M. Raab, Esq., WSBA No. 53004

8
                               stephen@gutridesafier.com
                               (415) 639-9090 x109

9
                               113 Cherry Street, #55150, Seattle, WA 98140
                               305 Broadway, 7th Floor, New York, NY 10007

10

11
                               Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27